MICHAEL L. LENNOX AND GLENDA J. LENNOX, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lennox v. Commissioner
Docket No. 158-91
United States Tax Court
T.C. Memo 1992-382; 1992 Tax Ct. Memo LEXIS 407; 64 T.C.M. (CCH) 67; July 8, 1992, Filed *407 An order denying petitioners' motion for litigation costs as supplemented will be issued and a decision for petitioners as to the deficiencies and additions to tax will be entered. For Petitioners: John D. Copeland. For Respondent: Steven W. Brower. SCOTT SCOTT MEMORANDUM OPINION SCOTT, Judge: This matter is before us on petitioners' motion for an award of litigation costs as supplemented pursuant to section 7430 and Rule 231. [1] Some of the expenses asked for in the motion relate to the time between the issuance of the notice of deficiency and the date of the filing of the petition. It is possible that the request for allowance of these expenses should be considered as a request for administrative rather than litigation expenses and, therefore, we will consider the motion as being one for administrative and litigation expenses. *408 In the notice of deficiency dated October 2, 1990, respondent determined deficiencies in petitioners' Federal income tax for the calendar years 1983, 1984, and 1985 in the amounts of $ 13,009, $ 7,536, and $ 7,715, respectively, and additions to tax under section 6661 in the amounts of $ 3,252, $ 1,884, and $ 1,929, respectively. The petition in this case, filed January 3, 1991, placed in issue all of the adjustments contained in the notice of deficiency, which primarily consisted of disallowance of operating losses incurred by petitioners in the years 1983, 1984, and 1985 and operating loss carryovers from prior years incurred in connection with the operation of the Quail Creek Apartments. The other adjustments were adjustments resulting from the changes to income reported by petitioners because of the adjustments with respect to the Quail Creek Apartments. Respondent disallowed the claimed losses on the basis that petitioners had not established that the expenses claimed in connection with the Quail Creek Apartments were ordinary and necessary business expenses, were expended or expended for the designated purpose. In their petition petitioners alleged that they were the true *409 owners of the Quail Creek Apartments and had properly reported the income and losses allocable thereto in all the years involved and were entitled to the claimed loss deductions. Respondent's answer filed on March 5, 1991, denied these allegations. Shortly after the filing of respondent's answer the case was referred to the appeals division of the office of district counsel and after one conference and the presentation of some evidence to the appeals officer by petitioners' attorney, petitioners were notified that all issues in the case would be conceded. When the case was called for trial on March 16, 1992, the parties filed a stipulation of settled issues in which it was stipulated that there were no deficiencies due from petitioners for the years 1983, 1984, and 1985, and no additions to tax due from petitioners for these years under section 6661. No stipulated decision was filed since petitioners on March 16, 1992, filed a motion for litigation costs. Oral argument was held on petitioners' motion for litigation costs, and, because of disagreements between the parties as to certain facts, a trial with respect to the motion for litigation costs was held. The record shows that *410 a revenue agent who was investigating the income tax liability of a Mr. Ron Piperi for the years 1983 through 1986 found that the net amount of the rents with respect to the Quail Creek Apartments had been turned over to Mr. Piperi, that no principal or interest payments had been made on the notes secured by a mortgage on the Quail Creek Apartments, and that Mr. Piperi had used the monies received from rents of the Quail Creek Apartments for his own benefit. The revenue agent investigating Mr. Piperi's return also found that there were other properties held by nominees for Mr. Piperi's benefit. Mr. Piperi had been the major stockholder and an officer of a building and loan association. Mr. Piperi had also arranged for petitioners to purchase the Quail Creek Apartments with financing by the building and loan association he controlled. The agent investigating Mr. Piperi's tax liability sent a memorandum to the office of the District Director in Austin, Texas, which office would have jurisdiction to investigate petitioners' returns. The memorandum stated that the Quail Creek Apartments appeared to have been owned by Mr. Piperi prior to 1982 and that a criminal referral was made *411 against Mr. Piperi by the Federal Home Loan Bank because he was instrumental in arranging a loan of several million dollars for construction of the Quail Creek Apartments in 1983 when the apartments had actually been constructed in 1982. The revenue agent stated that from his examination of Mr. Piperi's tax liability it appeared that petitioners might merely be straw persons holding the Quail Creek Apartments for Mr. Piperi's benefit, since an examination of Mr. Piperi's returns for 1983 through 1986 "revealed that Piperi was being remitted the total rents from the Quail Creek Apartments and was using same for personal expenses". This revenue agent then stated that he was of the opinion that the loans on the Quail Creek Apartments were nothing but shams for the benefit of Mr. Piperi and that this opinion was supported by the fact that petitioners were never out-of-pocket any expenses, never required to make principal payments, never given an accounting for funds or received funds from the rental income, and that the sole benefit derived by "both parties was a huge net operating loss". The memorandum dated August 10, 1990, suggested investigation of petitioners' returns to verify *412 if they were the owners in substance of the Quail Creek Apartments. This memorandum was received in respondent's Austin, Texas, office on August 14, 1990, and was referred to a revenue agent, Mr. Brookshire, on August 22, 1990. Mr. Brookshire on that date talked with an appeals officer and with the agent who had written the memorandum suggesting an investigation of petitioners' tax returns, and obtained a transcript of petitioners' tax payments which showed when their returns were filed. This information showed Mr. Brookshire that the period of limitations for assessment and collection of tax with respect to petitioners' taxable years 1983, 1984, and 1985 would expire on October 27, 1990. A few days later Mr. Brookshire called Mr. Lennox and explained that he was investigating petitioners' tax liability and requested Mr. Lennox to extend the period of limitations so that he would have time to conduct the investigation. Mr. Lennox told him he would obtain a representative and have that representative call Mr. Brookshire. Mr. Brookshire worked on a report based on the information he had received from the agent investigating Mr. Piperi's tax liability. He mailed a copy of the *413 report to Mr. Lennox on September 12, but Mr. Lennox never received the report mailed to him. However, Mr. Brookshire called Mr. Lennox on September 20 and inquired whether he would sign a consent to extend the period of limitations for assessment and collection of income taxes for the years 1983, 1984, and 1985 and discussed the case to some extent with him. Mr. Brookshire told Mr. Lennox that he would have to submit the case on September 21, 1990, for the issuance of a statutory notice if he did not receive a consent to extend the period of limitations. On September 21 Mr. Lennox called Mr. Brookshire and said that a Mr. Wines would represent Mr. Lennox and that Mr. Wines would contact Mr. Brookshire. On September 21 Mr. Wines called Mr. Brookshire and was informed by Mr. Brookshire that the ownership of the Quail Creek Apartments was being questioned. Mr. Brookshire explained that a question had been raised as to whether petitioners were actual owners of the apartments or were merely nominees for Mr. Piperi. Mr. Wines told Mr. Brookshire that petitioners were the record owners of the apartments according to the tax rolls and that Mr. Lennox had filed for bankruptcy in connection *414 with the debt on the apartments. Mr. Wines then offered to recommend to Mr. Lennox that he give a restricted consent to an extension of the period of limitations which would be restricted to adjustments connected with the Quail Creek Apartments, but would not recommend that Mr. Lennox sign a general consent. Later Mr. Wines called Mr. Brookshire back and said that he had discussed the period of limitations question with Mr. Lennox and Mr. Lennox was willing to execute a restricted consent extending the period of limitations with respect to matters related to the Quail Creek Apartments. Mr. Brookshire said that the revenue service would be unwilling to accept a restricted consent since the time was too short for the wording of a restricted consent to be worked out and approved and that the notice of deficiency would be issued. On approximately December 20, 1990, Mr. John D. Copeland, who is counsel for petitioners in this case, was asked to take the case for petitioners. He immediately began to look into some of the facts in order to be able to file a petition which, as heretofore stated, was filed on January 3, 1991. After the filing of the petition Mr. Copeland began to assemble *415 the facts. As soon as respondent's answer in this case was filed, he asked that the case be referred to an appeals officer. The case was so referred and Mr. Copeland had a discussion with the appeals officer and furnished him with information which the appeals officer found to be satisfactory to concede all issues in this case. Section 7430(a) as applicable to the date of the filing of the petition in this case provides that in any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under the revenue code, the prevailing party may be awarded a judgment or a settlement for reasonable administrative costs incurred in connection with an administrative proceeding within the Internal Revenue Service and reasonable litigation costs incurred in connection with such court proceeding. Section 7430(b) places limitations on the awarding of administrative or litigation costs requiring specified facts to be shown by the person claiming such costs. Section 7430(c)(1) defines reasonable litigation costs and section 7430(c)(2) defines reasonable administrative costs. *416 The parties agree that petitioners in the settlement prevailed on all the issues involved and satisfy the limitations contained in section 7430 other than whether petitioners are the prevailing parties as defined in section 7430(c)(4)(A)(i), which requires that to be the prevailing party a person must establish that the position of the United States in the proceeding was not substantially justified. Section 7430(c)(7)(A) and (B) defines "the position of the United States" to mean the position taken by the United States in a judicial proceeding to which the section applies and the position taken in an administrative proceeding to which the section applies as of the earlier of the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service office of appeals or the date of the notice of deficiency. In this case no decision was made by the Internal Revenue Service office of appeals prior to the issuance of the notice of deficiency. Therefore the United States is considered to have taken a position on October 2, 1990, the date the notice of deficiency was issued by respondent. It is from that date forward the Court must decide whether respondent's *417 position was not substantially justified. Petitioners have the burden of establishing that respondent's position was unreasonable. Rule 232(e). As of October 2 the only information that respondent had was that furnished to and obtained by the agent investigating Mr. Piperi's tax liability which showed that Mr. Piperi kept the rents from the Quail Creek Apartments and used the funds for his personal expenses. It also shows that no payment of principal or interest had been made on the mortgage note on the apartments and that other individuals held property as nominees for Mr. Piperi. Based on this limited knowledge and only about a month until the period of limitations on assessment and collection of petitioners' income taxes for 1983, 1984, and 1985 expired, it was not unreasonable for respondent to send a deficiency notice disallowing the deductions claimed by petitioners. See Harrison v. Commissioner, 854 F.2d 263 (7th Cir. 1988), affg. T.C. Memo. 1987-52. In a situation where respondent has a substantial basis to suspect that the holders of the record title to property are not the actual owners but merely nominees, it is reasonable to investigate *418 the facts to determine whether the individuals who held the record title were in fact the equitable owners of the property. After the issuance of the notice of deficiency on October 2, 1990, respondent ascertained the facts and conceded the case as expeditiously as might be expected. We do not understand petitioners to contend to the contrary. It is petitioners' position that at the time the notice of deficiency was issued respondent's position was not substantially justified. Petitioners apparently trusted Mr. Piperi completely and did not question his statements to them or his advice to them until the result of their actions with respect to the Quail Creek Apartments was a financial disaster. However, their activities with respect to the Quail Creek Apartments were such that it was reasonable for respondent to question whether the substance and the form of the transaction were the same until she had investigated the matter. Sher v. Commissioner, 861 F.2d 131, 135 (5th Cir. 1988), affg. 89 T.C. 79 (1987). The fact that respondent conceded the case after the petition was filed does not establish that the position respondent took prior to *419 the time the case was conceded was not substantially justified. Sokol v. Commissioner, 92 T.C. 760, 767 (1989). At the trial questions were raised as to the reasonableness of the action by the revenue agent in not accepting and working out with petitioners a consent to extend the period of limitations only with respect to adjustments connected with the Quail Creek Apartments. From the testimony of the revenue agent and the memorandum which started the investigation of petitioners' tax liabilities for the years here in issue it was obvious that the only transaction which respondent questioned concerned the Quail Creek Apartments. It appears to us that there was time to prepare and have executed by both parties a restricted consent. However, it is clear from section 7430(c)(7)(B) that the only position taken by the United States in an administrative proceeding which is to be considered in this case in determining whether petitioners are the prevailing party is the position taken by respondent beginning with the date of the deficiency notice. The date which applies here under the statute is October 2, 1990. Therefore the reasonableness of the actions of the *420 revenue agent in not accepting the restricted waiver are not relevant since those actions were taken prior to October 2, 1990. Based on this record we conclude that the position taken by respondent beginning with the date of the notice of deficiency was substantially justified. An order denying petitioners' motion for litigation costs as supplemented will be issued and a decision for petitioners as to the deficiencies and additions to tax will be entered. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩